

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE JP MORGAN CHASE & CO. SECURITIES LITIGATION, | ) ) ) | MDL No. 1783 |
| | ) | Master Docket No. 06 C 4674 |
| This Memorandum Opinion and Order Relates to : | ) ) | Judge David H. Coar |
| | ) | |
| *Blau v. Harrison et al.*, Case No. 04 C 6592 | ) ) | Magistrate Judge Martin C. Ashman |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on the motion of plaintiff and putative class representative Stephen Blau ("Plaintiff") to compel defendants J.P. Morgan Chase & Co., et al. ("Defendants"), to produce various documents Plaintiff requested in discovery. This matter was referred to this Court by Judge Coar pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1. For the reasons that follow, the Court grants Plaintiff's motion in part and denies it in part.

### I. **Background**

The Court briefly recites the facts germane to this discovery motion. In the underlying case, Plaintiff seeks to represent all shareholders of J.P. Morgan Chase & Co. ("JP Morgan") who were entitled to vote on the issue of the approval of JP Morgan's 2004 merger with Bank One Corporation ("Bank One"). (Def.'s Resp. to Pl.'s Mot. for Class Cert., Dkt. No. 15, at 1.) This case is a class action suit against various directors of JP Morgan. Generally, Plaintiff alleges that, in connection with the early-2004 merger between Bank One and JP Morgan, Defendants violated section 14(a) of the Securities Exchange Act by breaching their fiduciary duty to

JP Morgan shareholders and by promulgating a false proxy disclosure in seeking shareholder approval of the merger with Bank One. (*Id.* at 3.) Specifically,

> the core allegation in this case [is] whether [JP Morgan] failed to disclose in its April 19, 2004 proxy statement the alleged offer by James Dimon, the then CEO of Bank One, to conclude the merger with no premium in favor of Bank One shareholders as first reported by *The New York Times* on June 27, 2004. . . . In the proxy statement, defendants recommended that J P Morgan shareholders vote in favor of the merger with a 14% premium.

(Pl.'s Mem. at 2 & n.3.)

The parties have been engaged in extensive discovery for months. In response to Plaintiff's discovery requests, Defendants propounded a privilege log, which has been updated as of May 4, 2007. In response to Defendants' claims in the privilege log, Plaintiff filed the instant motion seeking to compel Defendants to produce various documents to which Plaintiff argues it is entitled.

## II.   Discussion

Defendants' privilege log notes that Defendants withhold various documents on the basis of the attorney-client privilege and work product doctrine. Within the Seventh Circuit, Professor Wigmore's formulation of the attorney-client privilege governs:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983) (citation omitted). As the party

asserting the attorney-client privilege, Defendants have the burden to show that all of these

elements apply. This showing must be made on a document-by-document basis.

The work product doctrine is distinct from but related to the attorney-client privilege. *See*

*United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975). The work product doctrine allows a

party to

> obtain discovery of documents . . . prepared in anticipation of litigation or for
> trial . . . only upon a showing that the party seeking discovery has substantial need
> of the materials in the preparation of the party's case and that the party is unable
> without undue hardship to obtain the substantial equivalent of the materials by
> other means. In ordering discovery of such materials when the required showing
> has been made, the court shall protect against disclosure of the mental
> impressions, conclusions, opinions, or legal theories of an attorney or other
> representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3). *See also Ziemack v. Centel Corp.*, No. 92 C 3551, 1995 WL 314526, at

*6 (N.D. Ill. May 19, 1995).

Defendants' privilege log and Plaintiff's arguments raise several issues that relate to

whether any protections Defendants might have had as to the requested documents were waived,

or whether the protections are otherwise legally inapplicable. First, Defendants' privilege log

purports to claim attorney-client privilege protection over drafts of merger-related proxy

statements and documents relating to filings with the SEC. According to Plaintiff, such

documents constitute business advice and therefore do not fall within the attorney-client

privilege. (Pl.'s Mem. at 5.)

Second, Defendants' privilege log indicates that various documents for which Defendants

claim the attorney-client privilege or the work product doctrine, or both, were shared between

- 3 -

Bank One and JP Morgan and their respective outside counsel before and after these two organizations signed the 2004 merger agreement. For these documents, Defendants' privilege log claims that Bank One and JP Morgan share a common interest, which allows them to share these documents without waiving any privilege that might apply.

Third, Defendants' privilege log shows that various documents for which Defendants claim the attorney-client privilege or the work product doctrine, or both, were shared between JP Morgan and JP Morgan's wholly-owned subsidiary, JP Morgan Securities, Inc. ("JPMSI"). Defendants state that, in the merger process, JP Morgan employed JPMSI to provide investment advice regarding the merger. (Pl.'s Reply at 8-9; Def.'s Sur-Reply at 10-11.) According to Defendants, any protections that might apply to these documents were not waived by sharing the documents with JPMSI because the sharing of privileged documents between a parent and a subsidiary does not waive any privilege.

Fourth, Plaintiff argues that the fiduciary exception to the attorney-client privilege, as set out in *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970), provides that Defendants must produce documents to Plaintiff (and those whom Plaintiff seeks to represent), to whom Defendants owe a fiduciary duty.

The Court addresses each of these arguments. As discussed below, the Court agrees with Plaintiff that drafts of proxy statements and filings with the SEC are not covered by the attorney-client privilege. The Court finds that JP Morgan and Bank One shared a common legal interest after they agreed to merge, on January 14, 2004, but not prior to this date; thus, any privileges that might apply to documents shared between these companies on or before January 14, 2004 are waived. Because JP Morgan and JPMSI are a parent and wholly-owned

- 4 -

subsidiary, any privilege that otherwise applies to documents shared between JP Morgan and JPMSI remains applicable. Finally, the Court holds that the fiduciary exception to the attorney-client privilege has no applicability in this case.

In addition to these legal arguments, Plaintiff challenges the designation of some of Defendants' documents as falling under the attorney-client privilege, the work product doctrine, or both. Specifically, Plaintiff argues that these documents do not contain confidential legal advice (in the case of the attorney-client privilege), or were not prepared in anticipation of litigation (in the case of the work product doctrine). For some of these documents, the Court cannot determine without viewing the documents themselves whether any privilege or protection applies, and the Court must view these documents *in camera*. For this reason, Defendants must produce the following documents to the Court by August 28, 2007:  2, 3, 5, 12, 13, 15, 19, 22, 25-28, 32, 37-39, 49-53, 58-59, 63-74, 76-77, 79, 81-87, 89-101, 103-08, 110-11, 114-15, 119-20, 124, 129, 131-33, 135, 140-44, 150-51, 155-59, 169, 171-73, 183, 189-91, 193-94.[1]


## A.    Drafts of Proxy Statements

Plaintiff challenges several of Defendants' claims that certain documents are covered by the attorney-client privilege; specifically, Plaintiff states that the documents are drafts of proxy

---

[1] The Court notes that several issues addressed in the parties' briefs have already been addressed. First, Plaintiff's Memorandum argues that the Defendants' privilege log is inadequate. (Pl.'s Mem. at 4-7.) Defendants' Sur-Reply indicates that this issue was satisfactorily addressed by the parties without this Court's intervention. (*See* Def.'s Sur-Reply at 1.)

Second, Plaintiff initially argues that Defendants should turn over an unredacted copy of document labeled JPM078414-15. (Pl.'s Mem. at 13-14.) The Court has reviewed this document *in camera* prior to issuing this opinion. (*See* Pl.'s Reply at 4 n.5.)

statements or are documents prepared in order to gain regulatory approval of the merger.

According to Plaintiff, such documents "do not constitute legal advice." (Pl.'s Mem. at 5 (citing *Christman v. Brauvin Realty Advisors, Inc.*, 185 F.R.D. 251, 256-57 (N.D. Ill. 1999)).) The Court agrees with Plaintiff. *Christman* addressed a similar—if not identical—question, and found that drafts of proxy statements and forms filed with the SEC "regard business, not legal, advice." *Christman*, 185 F.R.D. at 256. According to *Christman*, "drafts of proxy statements, comments to those drafts, and letters regarding the drafts are not within the scope of the [attorney-client] privilege because they are not legal advice. . . . 8-K forms [forms filed with the SEC to disclose information] . . . also[] regard business, not legal, advice." *Id. But see Ziemack*, 1995 WL 314526, at *4 (finding, without separate analysis, that drafts of proxy statements were covered by the claimed attorney-client privilege). Following this reasoning, the Court finds that documents that surround drafts of proxy statements and forms to be filed with the SEC for approval of the merger are not protected by the attorney-client privilege.

The documents for which Defendants claim the attorney-client privilege, but which Plaintiff argues are discoverable as being proxy statements, are the following documents,[2] identified by the number assigned on Defendants' privilege log: 5, 6, 7, 39, 58, 61, 63-73, 75-77, 81-87, 89, 90-101, 103-08, 110, 111, 115, 119-24, 129, 130-35, 137-41, 144, 150, 155, 156, and 159. From the Court's observation of Defendants' descriptions of the corresponding documents on Defendants' privilege log, not all of the documents that Plaintiff identifies relate to drafts of proxy statements or the filing of SEC forms. *Christman* held only that drafts of proxy statements

---

[2] The Court determines which documents Plaintiff objects to and which objection applies to which document by looking to Plaintiff's "Corrected Exhibit A to Reply Memorandum in Further Support of Plaintiff's Motion to Compel Privileged Documents." (*See* Dkt. No. 178.)

and surrounding comments and letters, as well as documents that concern SEC forms, do not fall within the attorney-client privilege. Some of the documents that Plaintiff identifies as being merger-related do not fall within *Christman*'s definition, to wit, documents 5-7 relate to James Dimon's employment agreement; document 39 seeks advice on a draft of an investor presentation; documents 61 and 130 seek advice of drafts of fairness opinion letters; documents 121 and 138-39 seek advice regarding fairness opinion letter drafts and the engagement letter between JP Morgan and JPMSI; document 123 seeks advice regarding drafts of investor presentations and fairness opinions; and documents 140-41 are e-mails that relate to "open merger issues," not the drafts of proxies. The Court does not understand how these documents relate to drafts of the proxy statements or to regulatory forms, and for this reason the Court declines to hold that these documents are not covered by the attorney-client privilege by operation of the *Christman* rule. Thus, the following documents are not covered by the attorney-client privilege: 58, 63-73, 75-77, 81-87, 89-101, 103-08, 110-11, 115, 119-20, 122, 124, 129, 131-35, 144, 150, 155, 156, and 159.

## B.     Common Interest

The Court next addresses documents that were shared between JP Morgan and Bank One. Defendants' privilege log lists various documents for which Defendants claim the attorney-client privilege or the work product doctrine applies, but which were shared with or received by Bank One or Bank One's attorneys during the merger period. Defendants state (in their privilege log and in their briefs) that these documents remain privileged even though the documents were shared with a third party (i.e., Bank One) because the documents are covered by the common

interest doctrine. The common interest doctrine holds that materials retain any applicable privilege (i.e., no waiver would apply) even if they were shared with a third party, so long as the third party and the party whose documents are at issue share a "common interest." This common interest must be a common legal interest, and not merely a common business interest. Also, this interest must be "identical, not simply similar." *Dexia Credit Local v. Rogan*, 231 F.R.D. 287, 293 (N.D. Ill. 2005).

Defendants argue that Bank One and JP Morgan maintained a community of interest both before and after their merger agreement was signed on January 14, 2004. The Court first considers the communications prior to the signing of the merger agreement. Specifically, Defendants claim that Bank One and JP Morgan shared a common interest that protects "six challenged communications between the parties and their outside counsel prior to and on January 14, 2004 (*i.e.*, while the terms of the Merger were still being negotiated)." (Def.'s Resp. at 13.) Defendants cite two non-controlling cases in support of their argument. *See Cavallaro v. United States*, 153 F. Supp. 2d 52, 62 (D. Mass. 2001); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 309 (N.D. Cal. 1987).

The Court is not convinced that the pre-merger documents shared between JP Morgan and Bank One remains protected by the attorney-client privilege and the common interest doctrine. Fundamentally, the Court does not understand how Bank One and JP Morgan can be said to share a common legal interest prior to their signing the merger. Prior to the merger, these organizations stood on opposite sides of a business transaction. From a business standpoint and from a legal standpoint, the merger parties' interests stood opposed to each other. They had no common interest, and indeed, their interests were in conflict—each company wanted to get the

best deal from the other company, and to the extent that one succeeded in its goal, the other suffered. The Court is also persuaded that JP Morgan's and Bank One's pre-merger interests are at odds in light of the practical implications of Defendants' argument. If Defendants' argument holds true, nothing would prevent a single attorney from representing both the buyer and the seller in a real estate transaction, for example. The reason such a situation does not occur—and is most likely ethically prohibited—is that the buyer and seller maintain opposite legal positions with respect to the transaction. With this in mind, the Court does not see how Bank One and JP Morgan can share a common legal interest prior to the signing of the merger agreement. At most, the companies had a similar business interest, in that each desired the merger negotiations to come to fruition. But even if JP Morgan and Bank One had a similar business interest, a common legal interest is required, and the Court cannot conclude from the existence of a common business interest that the parties' legal interests were identical. Thus, the Court concludes that the fact that Bank One received the confidential documents results in the waiver of the attorney-client privilege as to these documents. For this reason, no privilege or protection remains for the documents shared between Bank One and JP Morgan prior to the merger of January 14, 2004.

The Court next addresses the communications between Bank One and JP Morgan subsequent to the signing of the merger of January 14, 2004. Defendants argue that Bank One and JP Morgan shared a common interest after they signed the merger agreement in that both companies "had already agreed to merge, subject to shareholder approval, and were preparing documents to be filed jointly with the SEC and sent to shareholders of both banks in order to achieve the common purpose of shareholder and regulatory approval of the Merger." (Def.'s

- 9 -

Resp. at 13.) The Court agrees that after the parties to the merger signed the merger agreement, they shared a common interest in ensuring that the newly agreed merger met any regulatory conditions and achieved shareholder approval. Both parties had reached an agreement on the terms of the deal, and both parties at that point shared the goal of ensuring that the merger was approved. With this in mind, the Court sees significant benefit in allowing the Bank One and JP Morgan attorneys to communicate freely and openly and to exchange confidential documents. Therefore, because JP Morgan and Bank One shared a common legal interest following the signing of the merger agreement on January 14, 2004, documents shared between JP Morgan and Bank One subsequent to that date retain any attorney-client privilege and work product protection that would otherwise apply.

Plaintiff lists the following documents as being shared between JP Morgan and Bank One: 5, 6, 7, 58, 60, 66-68, 91, 96, 99, 101, 106, 107, 131-32, 140-41, 144, 150, 155, 156, 159, 171-73, and 189.[3] The following documents are dated January 14, 2004 or earlier: 5, 6, 7, 140, and 141. Upon reviewing Defendants' privilege log, documents 6 and 7 were sent by attorneys at Simpson Thacher & Bartlett LLP—JP Morgan's outside counsel—to JP Morgan. In addition, documents 140 and 141 are listed as being sent by and received by the same employee at JP Morgan. In other words, according to the privilege log, only JP Morgan and not Bank One was a recipient of documents 6, 7, 140, and 141. The Court can only conclude that Plaintiff listed these documents as being shared between JP Morgan and Bank One in error. Thus, the remaining document dated prior to January 14, 2004 that was shared between JP Morgan and

---

[3] This list also includes documents that were shared between JP Morgan, Bank One, and a third party, such as JPMSI. In this section, the Court is simply concerned with whether the sharing of these documents between JP Morgan and Bank One destroys the privilege.

Bank One is document number 5.[4]  Document number 5 is the lone document for which applicable privileges and protections are waived.

## C.    JP Morgan and JPMSI

Defendants' privilege log indicates that Defendants claim that some documents that were shared between JP Morgan and JPMSI are nonetheless covered by the attorney-client privilege or the work product doctrine, that is, that the sharing of these documents did not waive any protection.  According to Plaintiff, JP Morgan and JPMSI are separate entities that do not share a common legal interest, and Plaintiff argues that the sharing of otherwise privileged documents between the two waives that privilege.  The Court disagrees with Plaintiff.

Plaintiff appears to argue that JP Morgan and JPMSI do not share a common legal interest in the merger. (*See* Pl.'s Reply at 8-9 ("As separate entities, JPMSI's only common interest with JPM in the merger was financial." (footnote omitted)).)  Plaintiff then states in a footnote that although Defendants do not allege that documents shared between JP Morgan and JPMSI are covered by the common interest doctrine, the common interest doctrine would not apply in any event. (Pl.'s Reply at 9 n.8.)

The Court need not engage in an analysis regarding whether the documents shared between JP Morgan and JPMSI are covered by the common interest doctrine; as Plaintiff acknowledges, Defendants argue that these documents are covered by the attorney-client

---

[4]  The Court also notes that several of the documents dated after January 14, 2004 were not disclosed to both JP Morgan and Bank One, but instead were received and sent by only JP Morgan or only Bank One.  Because the Court finds that no privilege is lost even if these documents were shared between JP Morgan and Bank One, the Court need not address these errantly-listed documents individually.

privilege. (*Id.*) Thus, the Court's discussion centers around whether these documents can be protected by the attorney-client privilege. The Court concludes that these documents are protected.

Neither party disputes that JPMSI is a wholly-owned subsidiary of JP Morgan. Case law in this district demonstrates that confidential documents shared between members of a corporate family do not waive the attorney-client privilege. *See, e.g., Hartford Fire Ins. Co. v. PLC Enters.*, No. 93 C 6905, 1994 WL 148664, at *3 (N.D. Ill. 1994). Cases in other circuits have held similarly. *See, e.g., Crabb v. KFC Nat'l Mgmt. Co.*, 952 F.2d 403, at *3 (6th Cir. 1992) ("It is well settled that attorney-client privilege is not waived merely because the communications involved extend across corporate structures to encompass parent corporations, subsidiary corporations, and affiliated corporations.") From these cases, it follows that the documents shared remain subject to the attorney-client privilege, inasmuch as JPMSI is a wholly-owned subsidiary of JP Morgan.

Plaintiff obliquely argues that JP Morgan and JPMSI are "separate entities," by which the Court assumes that Plaintiff intends to argue that JP Morgan and JPMSI should not be considered a parent and subsidiary in this instance, but instead should be considered separate unrelated corporations. (*See* Pl.'s Reply at 8 (identifying JP Morgan and JPMSI as "'counterparties' to an engagement letter," which "states that JPMSI was hired as an independent contractor [whose] analysis . . . shall not be on behalf of [JP Morgan]'"). Even if JPMSI were not the wholly-owned subsidiary of JP Morgan, the Court believes that the documents should remain privileged.

As Plaintiff states, JP Morgan hired JPMSI to provide JP Morgan with investment advisory services in connection with the merger. (Pl.'s Reply at 8.) *Stafford Trading, Inc. v.*

*Lovely*, No. 05-C-4868, (N.D. Ill. Feb. 22, 2007), a recent case from this district, directly addresses the situation where a third-party investment advisor is "privy to confidential attorney-client communications." *Stafford Trading* extensively reviewed several lines of cases that considered whether to broaden the attorney-client privilege to cover such a situation. Ultimately, the court "adopt[ed a] balanced approach . . . limiting the privilege to those instances where Plaintiffs have demonstrated that GS [the third-party investment advisor] confidentially communicated with Kirkland [outside counsel] or Stafford's in-house counsel for the purpose of obtaining legal advice." *Id.* at \*7. *Stafford Trading* also recognized that "in today's market place, attorneys need to be able to have confidential communications with investment bankers to render adequate legal advice." *Id.* at \*6 (citing *Calvin Klein Trademark Trust v. Wachner*, 124 F. Supp. 2d 207, 209 (S.D.N.Y. 2000)).

The Court finds *Stafford Trading*'s discussion of the development of this area of law to be particularly instructive, and the parties' brief arguments surrounding the issue of whether the documents shared between JP Morgan and JPMSI are privileged do not warrant extensive additional discussion of the development of this area of law. The present situation is similar to that in *Stafford Trading*. Even if the Court assumes that JPMSI should not be treated as a wholly-owned subsidiary of JP Morgan, JPMSI was involved in providing JP Morgan with advice that was held in confidence by the proper recipients. JPMSI's task was to use the knowledge that JP Morgan's attorneys gave JPMSI in order to provide cogent investment advice regarding the merger with Bank One. Based on *Stafford Trading*, the Court finds that the mere fact that documents were shared with JPMSI does not render the attorney-client privilege waived, insofar as those documents contained or sought legal advice and otherwise remained confidential.

- 13 -

Plaintiff lists the following documents as being shared between JP Morgan and JPMSI: 39, 61, 63-87, 89-101, 103-08, 110-15, 119-24, 129-35, 137-39, 189-91. The Court finds that the receipt of these documents by JPMSI does not destroy any privilege that might apply.

## D. Fiduciary Exception

Although the Federal Rules of Civil Procedure and governing case law favor broad discovery in search of the truth, *see* Fed. R. Civ. P. 26(b)(1); *Allendale Mut. Ins. Co. v. Bull Data Sys. Inc.*, 152 F.R.D. 132, 135 (N.D. Ill. 1993), the attorney-client privilege allows a party to refrain from producing a document requested in discovery where the document contains a confidential communication between a client and her attorney in which the client seeks legal advice. *See Lawless*, 709 F.2d at 487. Plaintiff argues that the fiduciary exception to the attorney-client privilege, as formulated by *Garner*, 430 F.2d 1093, and its progeny, applies in this case. Because the fiduciary exception applies, Plaintiff argues, the attorney-client privilege does not apply to a host of documents and Defendants must therefore produce these documents.

*Garner* involved a derivative action in which the shareholders sought to recover the purchase price they and others similarly situated had paid for the corporation's stock. *Id.* at 1095. In response to discovery requests, the corporation claimed the attorney-client privilege. The Fifth Circuit considered the application of the attorney-client privilege "in a particularized context: where the client asserting the privilege is an entity which in the performance of its functions acts wholly or partly in the interests of others, and those others, or some of them, seek access to the subject matter of the communications." *Id.* at 1101. In this context, *Garner* held that

> where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the [attorney-client] privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance.

*Id.* at 1103-04. Although the Seventh Circuit itself has not discussed *Garner*, courts within this district have recognized the existence of the fiduciary exception. *See, e.g., J. H. Chapman Group, Ltd. v. Chapman*, No. 95 C 7716, 1996 U.S. Dist. LEXIS 5866, at *4 (N.D. Ill. May 1, 1996) ("The fiduciary duty exception is based upon the notion that a communication between an attorney and a client is not privileged from those to whom the client owes a fiduciary duty." (citation and internal quotations omitted)).

In order to demonstrate that the fiduciary exception requires otherwise attorney-client privileged documents to be produced, the party seeking the documents must demonstrate two things: first, that a fiduciary relationship exists as between the parties, and second, that good cause exists for overcoming the attorney-client privilege. *Id.* at *4-*5 Whether good cause is shown is determined by considering the following factors:

> whether the party seeking the information asserts a colorable claim, whether the information sought is not available elsewhere, whether the information sought is related to past or present actions, and whether the information sought may risk a revelation of trade secrets or other confidential information.

*Id.*

Courts have not been in agreement on the issue of whether the fiduciary exception applies outside of the context of a shareholder derivative suit. Most notably, *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 23 (9th Cir. 1981), was critical of the application of the exception in a securities fraud suit. *Weil* held that the policies

supporting the fiduciary exception were "inapposite" where the suit was not derivative but was a securities class action whereby the plaintiff sought "damages from the corporation for herself and the members of her proposed class." *Id.* Although *Weil* appears to make a blanket prohibition on the use of the fiduciary exception outside of the derivative suit context, not all courts have been as hostile. As one court in this district has described them, these less-hostile courts "view the distinction between a derivative action and a private securities fraud lawsuit as 'but one factor to be considered in assessing whether the plaintiffs have shown good cause for piercing the privilege.'" *Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*, No. 02 C 5893, 2006 U.S. Dist. LEXIS 88826, at *25 (N.D. Ill. Dec. 6, 2006) (citing *In re Omnicon Group, Inc. Sec. Litig.*, 233 F.R.D. 400, 411 (S.D.N.Y. 2006)).

*Jaffe* is the lone case in this district that has applied the fiduciary exception in a non-derivative securities case and that includes significant discussion of *Garner* and surrounding cases. Both Plaintiff and Defendant argue that *Jaffe* supports their arguments. *Jaffe* cautiously applied the fiduciary exception in a non-derivative, securities fraud case, while at the same time adopting logic of *In Re Omnicon* that cast doubt on the application of the fiduciary exception outside the derivative context. After outlining the diverging lines of authority regarding the application of the fiduciary exception in a non-derivative, securities fraud case, *Jaffe* quoted *In re Omnicon* as "question[ing] whether the fiduciary exception should apply routinely in securities fraud lawsuits," because in such cases the plaintiffs "'seek[] personal benefit and are not seeking to benefit the company,' and are 'complaining of alleged misconduct injurious to them as members of the investing public rather than injurious to the corporation.'" *Id.* at *26 (quoting *In re Omnicon Group, Inc. Sec. Litig.*, 233 F.R.D. at 412). *Jaffe* then stated that it had "similar

reservations about applying the fiduciary exception as a matter of course in securities fraud cases and view[ed] the non-derivative nature of the claim as a strong factor to consider in determining whether to prevent invocation of the attorney-client privilege." *Id.* at *26.

Despite these explicit reservations, *Jaffe* nonetheless applied the fiduciary exception. The court based its reasoning on the facts, which the court noted that the defendant did not dispute, "that the Class [i.e., the plaintiff] represents a substantial majority of shareholders who owned stock at the time of the communications in question," which assured the court that the defendants in fact owed a fiduciary duty to a majority of the plaintiffs. *Id.* at *27-*28. *Jaffe* also noted that the plaintiffs had established good cause required to overcome the attorney-client privilege. The court concluded its analysis by "stress[ing] that this holding should be narrowly construed." *Id.* at *28.

The Court recognizes that *Jaffe* applied the fiduciary exception to a non-derivative, securities fraud case such as the present case; nevertheless, the Court declines to extend *Jaffe* to the present situation. Initially, the Court agrees with *Jaffe* in its approval of the reasoning in *In re Omnicon.* The fiduciary exception is most clearly applicable in a derivative suit. The rationale that supports the fiduciary exception—that the directors and officers being sued in a derivative suit owe the plaintiffs fiduciary duties—is strained in a non-derivative suit, where the plaintiff is suing on behalf of herself, not on behalf of the company. *Garner* itself noted that the fiduciary exception should be judiciously applied, in light of the possibility that nonparty stockholders—to whom the directors and officers also owe a fiduciary duty—would be adversely affected by the non-applicability of the attorney-client privilege. *See Garner*, 430 F.2d at 1101 n.17.

This consideration is present in this case. In *Jaffe*, the plaintiffs submitted undisputed evidence that the plaintiff represented "a substantial majority of shareholders who owned stock at the time of the communications in question." 2006 U.S. Dist. LEXIS 88826, at *27. Here, on the other hand, Plaintiff's class has not been certified, and class certification is an issue that Defendants contest; thus, there exists a sizeable risk that, if the class is not certified, the application of the fiduciary exception would require turning over documents subject to the attorney-client privilege to persons seeking to advance their personal claim against Defendants. Such a situation would implicate the negative policy concerns identified in *Garner*, *In re Omnicon*, and *Jaffe*, which prompted these courts to caution against expansive application of the fiduciary exception. The Court recognizes that Plaintiff's proposed class includes all of the shareholders of JP Morgan, which would assuage the concerns in *Garner* and *Jaffe* that the class should represent the majority of shareholders who owned stock at the time of the alleged fraud. And, of course, this Court makes no suggestions as to the relative strength or weakness of Plaintiff's pending motion for class certification. The Court simply believes that, at present, the validity of the class remains a contested issue, and although the presence of this issue may not itself foreclose the applicability of the fiduciary exception, the issue does distance the present case from *Jaffe*.

Furthermore, *Jaffe* narrowed its application of the fiduciary exception by noting that the information the plaintiff sought was information from an accounting firm working with in-house

attorneys. At the same time, when the plaintiffs in *Jaffe* sought information from the defendant's outside counsel, *Jaffe* refused to apply the fiduciary exception:

> Unlike [Ernst & Young, an outside accounting firm], discussed above, the law firm of WilmerHale was retained to provide direct legal advice and analysis. . . . In light of the fact that Plaintiffs have not filed a derivative action; have interests that are clearly personal; and seek to recover for, and have charged Household with, injuries sustained by the investing public, not the corporation, the court declines to apply the *Garner* exception to the WilmerHale Communications.

*Id.* at *45 n.3. Here, the information Plaintiff seeks is correspondence between Defendants and their outside legal counsel. This is precisely the situation in which *Jaffe* declined to apply the fiduciary exception. The Court therefore follows *Jaffe* in this regard and finds that the fiduciary exception does not apply.

The Court notes that Plaintiff has presented arguments that support the good cause prong of the fiduciary exception analysis. Plaintiff's case has withstood a motion to dismiss; the Court is aware of no trade secrets that may be in play; a protective order covers these materials; and the requested information—already presented in redacted form—demonstrates that the information sought is relevant to Plaintiff's claim. However, even assuming that Plaintiff meets the good cause requirement, if the Court were to extend *Jaffe* to this situation, the Court's decision would be counter to the spirit of *Jaffe*, which cautioned against "applying the fiduciary exception as a matter of course in securities fraud cases." *Id.* *26. In other words, if the fiduciary exception were to apply in the present case, the Court is concerned that the present case would improperly broaden the application of the fiduciary exception, and that few security fraud class action suits would exist in which the fiduciary exception would not apply. In light of reasoning that militates against finding the applicability of the fiduciary exception, and in light of the cautiousness of

- 19 -

*Jaffe* in applying the fiduciary exception, the Court finds that the fiduciary exception does not apply to the documents at issue in the present motion. For this reason, to the extent that the attorney-client privilege otherwise applies, the information sought is not discoverable.

Plaintiff lists the following documents as discoverable due to the operation of the fiduciary exception to the attorney-client privilege: 6-11, 14, 16, 19, 22-28, 30-31, 42, 45-46, 48, 52-53, 163-70, 175-76, 179, 183, and 192-94. Because the fiduciary exception to the attorney-client privilege does not apply in this case, these documents retain attorney-client privilege protection to the extent this protection would otherwise apply.

## E.    *In Camera* Review: Anticipation of *Shaper* Litigation

In the parties' briefs, an issue arose regarding the application of the work product doctrine. Plaintiff essentially argues that certain documents (most of which are drafts of proxy materials) that Defendants claim are covered by work product doctrine protection are not covered by the protection. Central to this issue is whether documents were prepared in anticipation of litigation, as the work product doctrine protects documents from discovery that were prepared in anticipation of litigation. *Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983). "To be protected, work product must have been prepared for adversarial proceedings. Work prepared in the regular course of business is not protected by the work-product doctrine." *Christman*, 185 F.R.D. at 255-56 (citing *Binks Mfg. Co.*, 709 F.2d at 1118-19; *Allendale Mut. Ins. Co.*, 152 F.R.D. at 135). *Christman* notes that "drafts of proxy materials may come under the work-product doctrine if the drafts were prepared after the lawsuit

is filed, but not if the drafts were prepared before." *Christman*, 185 F.R.D. at 255 n.2 (citing *Ziemack*, 1995 WL 314526, at \*5).

In this case, a parallel securities fraud suit—the *Shaper* litigation—was filed shortly after the JP Morgan-Bank One merger took place. The issue then becomes whether the documents are prepared in anticipation of the *Shaper* litigation. Plaintiff argues that the issues at play in *Shaper* are fundamentally different from the issues in the present case, and that facts pertinent to *Shaper* will not "spill over" into this case. Defendants take issue with this characterization, arguing that these documents were prepared in anticipation of *Shaper*, and that they involve similar issues in the present suit.

The Court is unable to determine simply from looking at the Defendants' privilege log whether these materials—the bulk of which are drafts of proxy statements—were prepared in anticipation of *Shaper*, and whether the issues in *Shaper* render the work product doctrine applicable to these documents. The Court must look at the documents' contents in order to make this determination. Plaintiff argues that the following documents are not protected by the work product doctrine: 8, 19, 22, 25-28, 49-53, 58-59, 63-74, 76-77, 79, 81-87, 89-101, 103-08, 110-11, 114-15, 119-20, 124, 129, 131-33, 135, 142-44, 150, 155-57, 159, 169, 171-72. 183, 193-94. Of these documents, the Court notes that, upon reviewing Defendants' privilege log, Defendant has not claimed word product protection for document number 8. With the exception of document number 8, the Court will make an *in camera* inspection of these documents in order to determine whether they were properly prepared in anticipation of litigation.

**F.  *In Camera* Review: Attorney-Client Privilege**

Plaintiff argues that some of the documents for which Defendant claims the attorney-client privilege do not qualify for attorney-client privilege protection. Specifically, Plaintiff argues that documents 5, 8, 50, and 51 are not "communications" within the meaning of the attorney-client privilege; documents 3, 12, 13, 15, 34, 37, 38, 41, 49, 140, 141, 157, and 158 do not contain legal advice or client confidence; and documents 2, 39, 142, 143, 151, 173, and 189-91 are business related (and not related to obtaining legal advice).[5] Plaintiff asks this Court to review these documents *in camera* in order to determine the applicability of the attorney-client privilege.

First, the Court notes that Defendants have the duty to provide a privilege log that comports with this district's case law. *See Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992) ("Accordingly, we hereby order the plaintiff-discovery opponents to produce a privilege log listing each separate document they claim to be beyond discovery, described in the following separate categories [i.e., date, author, recipients, document's subject matter, purpose, and explanation of privilege]. . . . Any failure to comply with these directions will result in a finding that the plaintiff-discovery opponents have failed to meet their burden of establish[ing] the applicability of the privilege."). With this in mind, the Court has identified

---

[5] The Court gathers these arguments from Plaintiff's "Corrected Exhibit A to Reply Memorandum in Further Support of Plaintiff's Motion to Compel Privileged Documents." (*See* Dkt. No. 178.) The Court notes that Plaintiff's Memorandum in Support of His Motion to Compel included an exhibit that listed various challenges to Defendants' designations of attorney-client privileged documents. (*See* Pl.'s Mem. Ex. D.) Because Plaintiff's Corrected Exhibit A was filed more recently and because Corrected Exhibit A refers to Defendants' most recently updated privilege log, the Court defers to Corrected Exhibit A in the event of any discrepancy with the earlier-filed exhibit.

each challenged document in Defendants' privilege log in order to determine the sufficiency of the privilege log's description. The Court notes that documents 8, 41, 50, and 51 do not list a recipient; the privilege log is patently unable to allow the Court to determine by looking at the privilege log whether the attorney-client privilege should apply. Thus, the Court determines that Defendants have not met their burden, and therefore the attorney-client privilege does not apply to documents 8, 41, 50, and 51.

For the balance of the documents for which Plaintiff contests the application of the attorney-client privilege, the Court will view these documents *in camera*. Defendants are directed to submit the following documents for *in camera* review: 2, 3, 5, 12, 13, 15, 32, 37-39, 49, 140-43, 151, 157, 158, 173, and 189-91.

### III. **Conclusion**

For the foregoing reasons, the Court grants Plaintiff's motion in part and denies it in part.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: August 13, 2007.

Copies have been mailed to:

JEFFREY G. SMITH, Esq.
DEMET BASAR, Esq.
AYA BOUCHEDID, Esq.
RACHEL POPLOCK, Esq.
Wolf Haldenstein Adler Freeman
  & Herz, L.L.P.
270 Madison Avenue
New York, NY 10016

ADAM J. LEVITT, Esq.
Wolf Haldenstein Adler Freeman
  & Herz, L.L.C.
55 West Monroe Street
Suite 1111
Chicago, IL 60603

PAMELA S. TIKELLIS, Esq.
Chimicles & Tikellis, L.L.P.
One Rodney Square
Wilmington, DE 19899

JOSEPH N. GIELATA, Esq.
501 Silverside Road, No. 90
Wilmington, DE 19809

Attorneys for Plaintiffs

KATHLEEN L. ROACH, Esq.
COURTNEY A. ROSEN, Esq.
MATTHEW B. KILBY, Esq.
Sidley Austin, L.L.P.
One South Dearborn Street
Chicago, IL 60603

SUHANA S. HAN, Esq.
Sullivan & Cromwell, L.L.P.
125 Broad Street
New York, NY 10004

NANCY E. SCHWARZKOPF, Esq.
JP Morgan Chase
Legal Department
1 Chase Manhattan Plaza
26th Floor
New York, NY 10081

MICHAEL R. ROBINSON, Esq.
Richards Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

Attorneys for Defendants