# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE JP MORGAN CHASE & CO. SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>*Blau* v. *Harrison,* et al., No. 04 C 6592<br><br>*Hyland* v. *Harrison*, et al., No. 04 C 4675<br><br>*Hyland* v. *J.P. Morgan Securities, Inc.*, No. 06 C 4676 | MDL No. 1783<br><br>Master Docket No. 06 C 4674<br><br>Judge David H. Coar<br><br>Magistrate Judge Martin C. Ashman |

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement (the "Stipulation"), dated March 5, 2008, is entered into by and among Lead Plaintiffs Dr. Stephen Blau, Samuel Hyland, and Stephanie Speakman, on behalf of themselves and the Settlement Class (as hereinafter defined), and defendants William B. Harrison, Jr., Hans W. Becherer, Riley P. Bechtel, Frank A. Bennack, Jr., John H. Biggs, Lawrence A. Bossidy, M. Anthony Burns, James Dimon, Ellen V. Futter, William H. Gray, III, Helene L. Kaplan, Lee R. Raymond, John R. Stafford, J.P. Morgan Securities Inc. ("JPMSI"), and JPMorgan Chase & Co. ("JPMC"), by and through their respective counsel, to provide for the settlement ("Settlement") of the above-captioned action, pursuant to Rule 23 of the Federal Rules of Civil Procedure and subject to the approval of the Court.

**WHEREAS:**

**I.**

A.      On October 13, 2004, *Blau* v. *Harrison et al.*, Civil Action No. 04-6592 ("*Blau*" or "the *Blau* Action"), was filed in the United States District Court for the Northern District of Illinois against William B. Harrison, Jr., Hans W. Becherer, Riley P. Bechtel, Frank A. Bennack, Jr., John H. Biggs, Lawrence A. Bossidy, M. Anthony Burns, Ellen V. Futter, William H. Gray, III, Helene L. Kaplan, Lee R. Raymond, John R. Stafford, and JPMC.  The *Blau* Action asserts claims under §§ 14(a) and 20(a) of the Securities Exchange Act arising out of the 2004 merger (the "Merger") of JPMC and Bank One Corporation ("Bank One").  Specifically, the complaint alleges that the omission of certain alleged facts about the merger negotiations rendered the proxy statement soliciting shareholder approval for the Merger materially misleading.

B.      On January 5, 2005, the United States District Court for the Northern District of Illinois appointed Dr. Blau Lead Plaintiff and appointed Wolf Haldenstein Adler Freeman & Herz LLP Lead Counsel in the *Blau* Action.

C.      Dr. Blau filed an amended complaint on February 18, 2005.  On April 22, 2005, defendants moved to dismiss the amended complaint.  By opinion and order dated March 24, 2006, the Court denied in part and granted in part defendants' motion to dismiss.

D.      On April 7, 2006, defendants filed a motion for reconsideration and certification of the Court's March 24, 2006 order for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  On April 26, 2006, the Court denied defendants' motion.

E.      Dr. Blau filed a second amended complaint on April 10, 2006. As set forth in that complaint, Dr. Blau seeks to represent all persons who held shares of the common stock of JPMC at the close of business on April 2, 2004, the record date for voting on the Merger,

excluding the defendants, the officers and directors of JPMC at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had a controlling interest.

F.    Defendants answered the second amended complaint on May 15, 2006, denying the substantive allegations of the complaint and asserting numerous affirmative defenses, including that any alleged misstatement or omission in the proxy was immaterial, and that the proposed class suffered no damages as a result of any alleged misstatement or omission therein.

G.    On June 30, 2006, Dr. Blau moved for class certification.  On October 26, 2006, the Court ordered Dr. Blau to resubmit his motion for class certification on November 16, 2006. Dr. Blau resubmitted his class certification motion on that date, and the motion was fully submitted to the Court on December 24, 2006.

## II.

A.    On March 17, 2005, *Hyland* v. *Harrison et al.*, Civil Action No. 05-0162 ("*Hyland I*"), was filed in the United States District Court for the District of Delaware against William B. Harrison, Jr., Hans W. Becherer, Riley P. Bechtel, Frank A. Bennack, Jr., John H. Biggs, Lawrence A. Bossidy, M. Anthony Burns, Ellen V. Futter, William H. Gray, III, Helene L. Kaplan, Lee R. Raymond, John R. Stafford, James Dimon, and JPMC.  *Hyland I* asserted claims under §§ 10(b), 14(a), 20(a) of the Securities Exchange Act, §§ 11, 12(a)(2), and 15 of the Securities Act, and Delaware common law arising out of the Merger.  Specifically, *Hyland I* alleged that the omission of certain alleged facts about the merger negotiations rendered the proxy statement soliciting shareholder approval for the Merger materially misleading.  Hyland filed an amended complaint in *Hyland I* on May 23, 2005, adding Speakman as co-plaintiff.

B.      On June 21, 2005, the United States District Court for the District of Delaware appointed Samuel Hyland and Stephanie Speakman ("the *Hyland* Plaintiffs") as Lead Plaintiffs and appointed Joseph N. Gielata as Lead Counsel in *Hyland I*.

C.      On April 6, 2006, *Hyland* v. *J.P. Morgan Securities Inc.*, Civil Action No. 06-0224 ("*Hyland II*"), was filed in the United States District Court for the District of Delaware. *Hyland II* asserted claims under § 10(b) of the Securities Exchange Act and Delaware common law arising out of the Merger.  Specifically, *Hyland II* alleged that the omission of certain alleged facts about the merger negotiations rendered the opinion of JPMSI included in the proxy statement soliciting shareholder approval for the Merger materially misleading.

D.      Also on April 6, 2006, Hyland moved the Judicial Panel on Multidistrict Litigation for an Order centralizing the *Blau* Action, *Hyland I*, and *Hyland II* for coordinated pre-trial proceedings pursuant to 28 U.S.C. § 1407.

E.      On August 24, 2006, the Judicial Panel on Multidistrict Litigation, finding that the *Blau* Action, *Hyland I*, and *Hyland II* involved common questions of fact and that centralization would serve the convenience of the parties and conserve judicial resources, ordered that the actions be transferred to the Northern District of Illinois for coordinated or consolidated pretrial proceedings.

F.      On September 26, 2006, the Northern District of Illinois entered a scheduling and coordination Order governing all three actions in the MDL caption.  Pursuant to that Order, the *Hyland* Plaintiffs filed a consolidated amended complaint consolidating *Hyland I* and *Hyland II* (as consolidated, "the *Hyland* Action").  The consolidated amended complaint asserts claims under §§ 10(b), 14(a), and 20(a) of the Securities Exchange Act and under Delaware common law.

G.      The scheduling and coordination Order also permitted the *Hyland* Plaintiffs to participate in discovery.  The *Hyland* Plaintiffs received all documents produced by defendants in the *Blau* Action and examined all witnesses noticed for deposition by Dr. Blau.

H.      On October 23, 2006, defendants moved to dismiss the consolidated amended *Hyland* complaint.  By opinion and order dated December 18, 2007, the Court denied in part and granted in part defendants' motion to dismiss.  On January 14, 2008, defendants filed a motion for reconsideration of the Court's December 18, 2007 order.

### III.

A.      Since May 2006, the parties have engaged in extensive discovery.  Defendants have produced over 450,000 pages of written discovery and produced certain current and former employees of JPMC for depositions.  Defendants have also answered multiple sets of interrogatories regarding plaintiffs' allegations and claimed damages.  Plaintiff in the *Blau* Action produced approximately 1,800 pages of written discovery in connection with his motion for class certification and submitted himself and his wife for depositions.

B.      Lead Counsel (as hereinafter defined) have conducted an exhaustive investigation and studied the discovery material relating to the claims and the underlying events and transactions alleged in the complaint, including reviewing the documents produced by defendants, defendants' responses to plaintiff's interrogatories, and the transcripts of depositions taken to date.  Lead Counsel have thoroughly analyzed the information gleaned from this investigation and have researched the applicable law with respect to Lead Plaintiffs' claims against the defendants, the asserted and potential defenses thereto, and the likelihood of recovering damages at trial.

C.      In 2006, counsel for the *Hyland* Plaintiffs proposed a potential settlement of the litigation comprised in whole or part of a substantial stock repurchase by JPMC designed to achieve monetary benefits to members of the proposed class.  This proposal was rejected.

D.      On several occasions in early summer of 2007, counsel for Dr. Blau and defendants engaged in preliminary, exploratory discussions concerning a potential settlement of the *Blau* Action.   During these discussions, counsel for Dr. Blau raised the possibility of a settlement comprised in whole or part of a damages award to the proposed class.  These preliminary discussions were unsuccessful, with defendants denying all wrongdoing and refusing to pay monetary damages.

E.      In August 2007, counsel for Dr. Blau and the defendants once again began to investigate the possibility of resolving the action without going to trial.  Counsel for Dr. Blau and defendants exchanged several proposals for a potential settlement.  These negotiations culminated in an agreement-in-principle to resolve this action with a settlement focusing on JPMC's corporate governance procedures.

F.      On December 14, 2007, Dr. Blau and defendants jointly notified the Court that they had signed a Stipulation of Settlement, dated December 7, 2007 ("the *Blau* Settlement").  Pursuant to the *Blau* Settlement, JPMC would adopt certain corporate governance procedures set forth herein.  The settlement provided for the release of all claims that had been asserted, or could have been asserted, by the members of the proposed class.

G.      In January 2008, the *Hyland* Plaintiffs and defendants agreed to retain the Hon. Nicholas H. Politan, a retired District Judge for the District of New Jersey, to mediate a potential global settlement.  On January 29, 2008, defendants and the *Hyland* Plaintiffs submitted

confidential mediation statements to Judge Politan, who thereafter conducted an all-day

mediation session on February 5, 2008.

       H.      After a full day of negotiations through Judge Politan, counsel for the *Hyland*

Plaintiffs and defendants signed a Memorandum of Understanding agreeing to settle the *Hyland*

Action on terms substantially the same as the *Blau* Settlement with certain modifications

negotiated by the *Hyland* Plaintiffs.

## IV.

       A.      The corporate governance procedures contemplated by this Settlement are

tailored to address particular allegations in the complaints concerning the disclosures in the

proxy statement issued in connection with the Merger, which plaintiffs claim was rendered

materially misleading by the alleged omissions.  As a reform specifically directed at the

allegation that the individual defendants negligently disseminated a proxy statement omitting

information regarding the Merger negotiations, the corporate governance procedures embodied

in this Settlement provide for early and meaningful oversight by the Board of Directors of JPMC,

or a designated committee thereof, of any negotiations by the CEO of JPMC of  proposed

corporate transactions that would require shareholder approval, and meaningful Board

involvement in the preparation of any proxy statements issued in connection therewith.

       B.      Lead Counsel in the *Blau* Action has retained Jeffrey N. Gordon, the

Alfred W. Bressler Professor of Law at Columbia Law School, and Co-Director of the Columbia

Center for Law and Economic Studies, who is a recognized expert in the fields of corporate

governance, corporations, and mergers and acquisitions.  Professor Gordon has opined that the

corporate governance measures contemplated by the Settlement are a creative, novel, and

effective means of benefiting the members of the proposed class and JPMC shareholders by

increasing Board oversight of important negotiations that may ultimately affect the value of

shareholders' stock and increasing Board participation in the preparation of proxy statements that

must inform shareholders of the material facts relevant to their vote on corporate transactions

that require shareholder approval under applicable law and listing standards.

       C.     67% of the Settlement Class (as defined below) consists of institutional

shareholders, many of which continue to hold their shares.

       D.     Counsel for the parties have engaged in arm's-length negotiations in

reaching the Settlement, including a full-day mediation between the *Hyland* Plaintiffs and

defendants facilitated by Judge Politan.

       E.     This Stipulation of Settlement shall not be construed or deemed to be a

concession by Lead Plaintiffs of any infirmity in the claims asserted in their actions.

       F.     Defendants have denied and continue to deny all charges of wrongdoing

or liability against them arising out of any conduct, statements, acts, or omissions alleged, or that

could have been alleged, in the complaint.  This Stipulation shall not be construed or deemed to

be evidence, or an admission or concession on the part of any defendant with respect to any

claim, of any fault, liability, wrongdoing, or damage or any infirmity in the defenses that the

defendants have asserted.  Nonetheless, in deciding to settle the litigation, the defendants have

concluded that further conduct of the litigation would be protracted and costly.  Defendants'

willingness to approve the corporate governance procedures contemplated by this Settlement

shall in no event be construed or deemed to be evidence of any defect or inadequacy in JPMC's

existing corporate governance procedures.

       G.     Based upon (i) their investigation, (ii) the uncertain outcome of litigation

and appeals, (iii) an assessment of the likelihood of establishing defendants' liability and

recovery of damages at trial, (iv) the substantial benefits plaintiffs and members of the proposed

class will receive from settlement of the litigation, and (v) negotiations with defendants' counsel,

Lead Plaintiffs and Lead Counsel have concluded that the terms and conditions of this Settlement

are fair, reasonable, adequate and in the best interests of the members of the Settlement Class.


**NOW, THEREFORE**, in consideration of the mutual promises and recitals

contained herein, and other good and valuable consideration, the sufficiency of which is hereby

acknowledged,

**IT IS HEREBY STIPULATED AND AGREED**, by and among the parties,

through their respective attorneys, subject to approval of the Court pursuant to Rule 23 of the

Federal Rules of Civil Procedure, that this action and all Released Claims (as hereinafter

defined) as against the Released Parties (as hereinafter defined) shall be compromised, settled,

released, and dismissed with prejudice, upon the following terms and conditions:

### DEFINITIONS

1.      As used in this Stipulation, the following terms shall have the following

meanings:

   a) "Lead Counsel" means the law firms of Wolf Haldenstein Adler Freeman & Herz

   LLP for the *Blau* Action and Joseph N. Gielata, Attorney at Law, for the *Hyland*

   Action.

   b) "Lead Plaintiffs" means Stephen Blau for the *Blau* Action and Samuel Hyland

   and Stephanie Speakman for the *Hyland* Action.

   c) "Order and Final Judgment" means the proposed order to be entered approving

   the Settlement.

d) "Effective Date" means the date on which the Court enters the Order and Final Judgment.

e) "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

f) "Preliminary Hearing Order" means the proposed order preliminarily approving the Settlement and directing notice thereof.

g) "Released Parties" means any and all of the defendants; any and all of their subsidiaries, parents, successors, and predecessors; any individual, partnership, corporation, limited liability entity, trust, joint venture, unincorporated organization or other entity in which any defendant has an interest or which is related to or affiliated with any of the defendants, and the legal representatives, heirs, successors in interest, assigns, officers, directors, agents, attorneys, accountants, auditors, advisors, employees, partners, insurers, and attorneys of each of the foregoing.

h) "Released Claims" means any and all claims, debts, demands, rights, causes of action, or liabilities, whether based on federal, state, local, statutory, or common law or any other law, rule, or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class, derivative, or individual in nature, including both known claims and Unknown Claims (as defined below), (i) that have been asserted in this action

by the Settlement Class Members (as defined below), or (ii) that could have been asserted by any of the Settlement Class Members against any of the Released Parties based upon or arising from the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in any of the complaints filed by the plaintiffs.

i)  "Releasing Parties" means Lead Plaintiffs and members of the Settlement Class on behalf of themselves, their heirs, executors, administrators, successors, and assigns.

j)  "Settlement Class" and "Settlement Class Members" means all persons who owned or held shares of JPMC on April 2, 2004, the record date for voting on the Merger with Bank One.

k)  "Unknown Claims" means any claims which Lead Plaintiffs or any Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the Effective Date.  With respect to any and all Released Claims, the parties stipulate and agree that upon the Effective Date, Lead Plaintiffs shall expressly, and each Settlement Class Member shall be deemed to have, and by operation of the Order and Final Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law, whether based on federal, state, local, statutory, or common law or any other law, rule, or regulation, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides that "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the

- 11 -

debtor." Lead Plaintiffs acknowledge, and the Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement.

## NO ADMISSION OF WRONGDOING

2.      The parties enter into this Stipulation of Settlement without in any way acknowledging any fault, liability, or wrongdoing of any kind. There has been no adverse determination by any court against any of the defendants or the Lead Plaintiffs on the merits of the claims asserted by the plaintiffs or the defenses asserted by the defendants. This Stipulation of Settlement, its terms or provisions, the negotiations leading to it, and the proceedings connected with it, (a) shall not be deemed to be (i) a presumption, concession, or admission by any defendant of any fault, liability, or wrongdoing as to any facts or claims alleged or asserted in the action, or any other action or proceeding; or (ii) a presumption, concession, or admission by plaintiffs of any lack of merit in any claim of any fault, liability, or wrongdoing as to any facts or claims alleged or asserted in the action, or any other action or proceeding; and (b) shall not be interpreted, construed, deemed, invoked, offered, or received in evidence or otherwise used by any Settlement Class Member or the parties to the action or in any other action or proceeding, whether civil, criminal, or administrative, except for purposes of enforcement of the terms and conditions of this Stipulation, the Order and Final Judgment, and the Settlement contemplated hereby.

## SETTLEMENT TERMS

3.      In settlement of the Released Claims, JPMC agrees to adopt and to take such actions as are necessary to implement the following corporate governance and compliance measures:

a) Within 60 days following the Effective Date, the Board of Directors of JPMC will amend its corporate governance principles to codify best practices by adopting the corporate governance measures described below (the "Corporate Governance Agreed Procedures").

b) The Corporate Governance Agreed Procedures will be in effect for four years from adoption; provided, however, that any such Procedures may be altered or terminated if the Board, upon advice of counsel, determines that:

- the Corporate Governance Agreed Procedures conflict with any law, regulation or rule to which JPMC is subject;

- a different corporate governance measure adopted by the Board would more appropriately effect the goals of the Corporate Governance Agreed Procedures that are the subject of this Stipulation; or

- JPMC merges into another company and is not the surviving entity of such merger.

c) Pursuant to the current corporate governance principles of the JPMC Board, the non-management directors have appointed a Presiding Director. The CEO will inform the Presiding Director about discussions the CEO may have with another party or that party's authorized designee regarding a proposed transaction with that party where (i) such discussions involve a clear expression of interest in addressing the terms of the proposed transaction, and (ii) such transaction, if consummated, would require approval by the shareholders of JPMC under Delaware state law, or the rules and regulations of any stock exchange on which JPMC has listed its stock.

d) The Presiding Director and the CEO will review with the Board, or a committee thereof, the process for communicating with the Board, or a committee thereof,

about the proposed transaction as contemplated and described above, including the method and frequency of the communications.

e)   Further, to the extent such a proposed transaction proceeds to the shareholder approval process, the Board will, consistent with its legal and regulatory obligations, review any proxy statement issued in connection with a proposed transaction requiring shareholder approval and additionally, will appoint a committee to assist it in this process (the "Designated Committee").  The Designated Committee may be an existing committee of the Board or an ad hoc committee, provided that any such committee shall be composed entirely of independent directors.

f)   The Designated Committee will review, with the assistance of JPMC's senior management and financial and legal advisors, the "background of the merger" section of the proxy statement and will have the authority to make recommendations to the full Board.

g)   In furtherance of the procedures established above, the Board and/or the Designated Committee may, at their discretion, seek advice and assistance from advisors and consultants, as they deem necessary.  The Board and/or the Designated Committee will be provided the resources for such purposes.

h)   In the final year of the period during which the Corporate Governance Agreed Procedures are in effect, the Corporate Governance & Nominating Committee of the JPMC Board shall determine whether to recommend to the JPMC Board to extend voluntarily the effective period of the Corporate Governance Agreed

Procedures subject to the termination provisions set forth above, or as otherwise determined to be appropriate.

## CLASS CERTIFICATION

4.    For the sole purpose of implementation, approval, and consummation of this Settlement, the parties stipulate and agree to request the Court to approve the certification of the Settlement Class as a non-opt-out class pursuant to Federal Rule of Civil Procedure 23(b)(2), and appointing Lead Plaintiffs as the representatives of the Class.

## CONFIRMATORY DISCOVERY

5.    This settlement is contingent upon the completion of confirmatory discovery concerning the Merger negotiations and Lead Counsel's good-faith determination that such discovery, together with the extensive discovery provided to date, confirms that this settlement is fair, reasonable, and adequate.

## PRELIMINARY APPROVAL AND NOTICE

6.    Promptly after execution of this Stipulation and the completion of confirmatory discovery, the parties will present this Stipulation of Settlement to the Court for preliminary approval and will take all appropriate steps and use their best efforts to obtain final Court approval of this Stipulation of Settlement and to procure dismissals with prejudice of the actions.  Concurrently with their application for preliminary Court approval of the Settlement, Lead Counsel and defendants' counsel shall jointly move the Court for entry of a Preliminary Hearing Order, in a form to be agreed by the parties, and approval for publication of notice of the settlement of the action, which shall include the general terms of the Settlement and the time, date, and location of the Settlement hearing.

7.      Upon moving for preliminary approval, the parties will seek from the Court a stay of this litigation and take any steps necessary to effect this stay in this Court.

8.      Notice of the proposed settlement shall be provided to the public by (i) Lead Counsel's publishing a Summary Notice, in a form to be agreed by the parties and presented to the Court, in Business Wire, (ii) JPMC's publishing the same or substantially the same notice as a quarter-page advertisement in the national and local editions of the *Wall Street Journal*, the *New York Times*, and the *Financial Times*, (iii) JPMC's including the same or substantially the same notice in a corporate filing with the Securities and Exchange Commission, which shall also be posted on JPMC's corporate website; and (iv) Lead Counsel's posting the same or substantially the same notice in a dedicated section of their respective web sites related to this litigation.

9.      JPMC shall bear all costs and expenses related to promulgating notice in the manner set forth above, and Lead Plaintiffs and their counsel shall have no responsibility for the dissemination of or the costs and expenses related to such notices, except as to item (iv) above, which is solely the responsibility of Lead Counsel.

10.     Lead Counsel and defendants' counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Hearing Order and the Settlement, and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.  Lead Counsel and defendants' counsel agree to use their best efforts to obtain approval of this Settlement Agreement and to carry out the terms thereof.  Lead Counsel and defendants' counsel shall support the settlement contemplated by this Settlement Agreement in all statements in any forum.

## FEES AND EXPENSES

11.     If this Stipulation of Settlement is approved by the Court, Lead Counsel and associate counsel that have appeared in the actions intend to apply to the Court for an award of reasonable attorneys' fees and expenses.  Counsel will in good faith attempt to mediate reasonable attorneys' fees and expenses, subject to the Court's approval, as soon as practicable. Judge Politan shall act as mediator.

12.     JPMC will pay reasonable attorneys' fees and expenses as awarded by the Court within seven business days of the date after which no appeals may be taken from the Order and Final Judgment.

13.     The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court and the Court shall retain jurisdiction for the purpose of entering any orders providing for awards of attorneys' fees and expenses to Plaintiffs' Counsel and enforcing the terms of this Settlement.

14.     No order of the Court, or modification or reversal on appeal of any order of the Court concerning the amount or allocation of attorneys' fees or expenses shall constitute grounds for cancellation or termination of this Stipulation.

## SCOPE AND EFFECT OF SETTLEMENT

15.     The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the action as against the defendants and any and all Released Claims as against all Released Parties.

16.     Upon the Effective Date, the Releasing Parties hereby expressly and irrevocably waive and fully, finally, and forever settle and release all Released Claims that any Releasing Party ever had, could have had, now has or hereafter can, shall, or may have against

- 17 -

any of the Released Parties, and shall forever be enjoined from prosecuting, either directly or in any other capacity, any Released Claims against any of the Released Parties.

17.     Upon the Effective Date, each of the defendants, and each of the Released Parties, hereby completely discharges, settles, dismisses with prejudice on the merits, and releases the Releasing Parties and Plaintiffs' Counsel of and from any claims arising from or based upon the Released Claims or this action.

18.     If the Settlement contemplated by this Stipulation is approved by the Court, counsel for the parties shall request that the Court enter an Order and Final Judgment in a form to be agreed by the parties.

19.     Any party shall have the right to terminate the Settlement and this Stipulation by providing written notice of the election to do so ("Termination Notice") to all other parties hereto within thirty days of: (a) the Court's declining to enter the Preliminary Hearing Order in any material respect; (b) the Court's refusal to approve this Stipulation or any material part of it; (c) the Court's declining to enter the Order and Final Judgment in any material respect (except as to any award of fees or expenses); or (d) the date upon which the Order and Final Judgment is modified or reversed in any material respect (except as to any award of fees or expenses).

20.     Except as otherwise provided herein, in the event the Settlement is terminated or fails to become effective for any reason, the parties to this Stipulation shall be deemed to have reverted to their respective *status quo ante*, except for defendants' obligations to pay for the costs of notice under paragraph 9 to the extent such costs have already been incurred.

21.     All discovery materials and information (including but not limited to documents; responses to interrogatories, document requests, subpoenas or other oral or written

requests; transcripts (including but not limited to deposition transcripts) of any kind and in any medium; privilege logs; and all data furnished or stored by electronic means (including but not limited to digital media, computer files, emails, attachments, and tape storage units) produced or provided by any of the parties or non-parties before, on, or after the date of this Settlement Agreement, whether produced or provided informally or pursuant to discovery requests, shall be governed by the Stipulation and Protective Order entered by the Court on July 26, 2006, including but not limited to the provisions for the return or destruction of confidential discovery material.

22.    This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

23.    This Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all parties hereto or their successors-in-interest.

24.    The construction, interpretation, operation, effect, and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the internal laws of the State of Delaware without regard to its conflicts of laws principles, except to the extent that federal law requires that federal law governs.

25.    This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the parties, it being recognized that it is the result of arm's length negotiations between the parties and that all parties have contributed substantially and materially to the preparation of this Stipulation.

26.    This Stipulation constitutes the entire agreement among the parties concerning the Settlement of the action, and no representations, warranties, or inducements have been made by any party hereto concerning this Stipulation other than those contained and memorialized in such documents.

27.    This Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

## REPRESENTATIONS

28.    Plaintiffs and Lead Counsel represent that their respective actions and all associated complaints were filed in good faith, in compliance with Federal Rule of Civil Procedure 11, and after an adequate investigation of their claims and the basis for them.

29.    Plaintiffs and Lead Counsel represent and warrant that they have not assigned, encumbered, or in any manner transferred in whole or in part any of the claims or causes of action asserted in this action.

30.    All counsel and any other person executing this Stipulation, or any related settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

31.    The parties agree that all terms of the Settlement were negotiated at arm's length in good faith by the parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

Dated: March 5, 2008

Jeffrey G. Smith
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York  10016
(212) 545-4600

*Counsel for Plaintiff Stephen Blau*

_____

Joseph N. Gielata
Attorney at Law
501 Silverside Road, No. 90
Wilmington, Delaware  19809
(302) 798-1096

*Counsel for Plaintiffs Samuel Hyland and Stephanie Speakman*

_____

Sharon L. Nelles
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

*Counsel for Defendants*

Jeffrey G. Smith
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York  10016
(212) 545-4600

*Counsel for Plaintiff Stephen Blau*

Joseph N. Gielata
Attorney at Law
501 Silverside Road, No. 90
Wilmington, Delaware  19809
(302) 798-1096

*Counsel for Plaintiffs Samuel Hyland and Stephanie Speakman*

Sharon L. Nelles
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

*Counsel for Defendants*

Dated: March 5, 2008

_____    Jeffrey G. Smith
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York  10016
(212) 545-4600

*Counsel for Plaintiff Stephen Blau*

_____    Joseph N. Gielata
Attorney at Law
501 Silverside Road, No. 90
Wilmington, Delaware  19809
(302) 798-1096

*Counsel for Plaintiffs Samuel Hyland and Stephanie Speakman*

Sharon L. Nelles
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

*Counsel for Defendants*

- 21 -